**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000987
23-AUG-2017
08:10 AM**

NO. CAAP-14-0000987

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
DAVID T. FLEMING, Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CRIMINAL NO. 06-1-0570(1))


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Fujise and Ginoza, JJ.)


Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant David T. Fleming (Fleming) by indictment with first-degree sexual assault. The indictment charged Fleming with knowingly subjecting the complaining witness (CW) by strong compulsion to an act of sexual penetration, namely, placing his penis into her genital opening, in violation of Hawaii Revised Statutes (HRS) § 707-730(1)(a) (2014).[1]

Fleming was the driver of a taxicab van who transported the CW from a nightclub back to her apartment complex. The alleged sexual assault took place in the parking lot of the CW's apartment complex. The CW's version of the charged incident

---

[1] HRS § 707-730(1)(a) provides:

(1) A person commits the offense of sexual assault in the first degree if:

(a) The person knowingly subjects another person to an act of sexual penetration by strong compulsion[.]

contrasted sharply with Fleming's version. According to the CW, after she exited the van, Fleming shoved her against the van, forced her legs apart, and subjected her to sexual penetration. According to Fleming, when the CW exited the van, she began hugging and kissing him, he told her to wait so that he could retrieve a condom, and when he returned, they went back inside the van and engaged in consensual sexual intercourse. The jury found Fleming guilty as charged of first-degree sexual assault.

The trial was significantly delayed by examinations to determine whether Fleming was competent to proceed to trial. The Circuit Court of the Second Circuit (Circuit Court) granted two separate motions filed by Fleming's counsel for mental examination to determine Fleming's fitness to proceed to trial. After each court-ordered mental examination, the three appointed examiners all opined that Fleming was competent to proceed, and the Circuit Court so ruled. The case proceeded to trial. After the State had presented its case in chief, Fleming's counsel informed the Circuit Court that he had concerns about Fleming's fitness to proceed and orally moved for a third mental examination to determine Fleming's competency. The Circuit Court denied the motion.

After the jury returned its guilty verdict, Fleming moved for a new trial. The Circuit Court denied Fleming's new trial motion, but suspended the proceedings because it determined that Fleming was incompetent to proceed to sentencing. Eventually, the Circuit Court found that Fleming was competent to proceed to sentencing, and it sentenced Fleming to twenty years of imprisonment.

On appeal, Fleming contends that: (1) the indictment was defective; (2) the Circuit Court erred in denying his motion to dismiss the indictment for violation of the speedy trial requirements of Hawai'i Rules of Penal Procedure (HRPP) Rule 48 (2000); (3) the Circuit Court erred in denying Fleming's motion for a new trial because: (a) he was tried while incompetent, (b) the Circuit Court should have suspended the trial to conduct a

2

third competency examination, and (c) he was denied a fair trial by prosecutorial misconduct during closing argument; (4) the Circuit Court erred in its jury instructions; (5) Fleming's trial counsel provided ineffective assistance; and (6) the Circuit Court committed significant errors and Fleming was denied a fair tribunal in the post-verdict proceedings regarding his fitness to proceed.[2]

As explained below, we remand the case for further proceedings with respect to Fleming's motion for new trial.

BACKGROUND

I.  Pretrial Mental Examinations

A Maui grand jury returned an indictment against Fleming on November 3, 2006, for first-degree sexual assault.  In October 2007, Fleming's counsel filed a motion for mental examination pursuant to HRS § 704-404 to determine (1) penal responsibility -- whether as a result of physical or mental disease, disorder, or defect, Fleming lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law at the time of the charged offense; and (2) competency to proceed to trial -- whether as a result of a physical or mental disease, disorder, or defect, Fleming lacked capacity to understand the proceedings against him or to assist in his own defense.  The Circuit Court granted the motion and appointed a panel of three examiners: Martin Blinder, M.D. (Dr. Blinder), Tom Cunningham, Ph.D. (Dr. Cunningham), and George Choi, Psy.D. (Dr. Choi).  After examining Fleming, all three examiners opined that Fleming was penally responsible at the time of the charged offense and that he was competent to proceed to trial.[3]  The Circuit Court held a

---

[2] The Honorable Joel E. August presided over Fleming's trial and his new trial motion.  The Honorable Rhonda I.L. Loo presided over subsequent proceedings at issue in this appeal.

[3] Fleming did not raise lack of penal responsibility as a defense at trial.

3

hearing on February 27, 2008, and it found Fleming competent to proceed to trial.

In August 2008, Fleming's counsel filed a second motion for mental examination pursuant to HRS § 704-404 to determine Fleming's competency to proceed to trial. The Circuit Court granted the motion and appointed the same three examiners to examine Fleming. After conducting their examinations, the three examiners again opined that Fleming was competent to proceed to trial. The Circuit Court held a hearing on December 3, 2008, and it found Fleming competent to proceed to trial.

## II. Trial

### A.

The Circuit Court conducted jury selection on January 11, 2010, and the evidentiary portion of the trial began on January 12, 2010. The following evidence was adduced at trial.

On the night in question, Fleming was working as a taxicab driver. At about 11:30 p.m., he drove the CW from a nightclub to her residence, which was a short distance away. The CW resided in an apartment complex in Lahiana. The CW was five feet four inches tall and weighed about 125 to 130 pounds. Fleming was six feet tall and weighed about 220 to 230 pounds. At the time of the charged incident, the CW was twenty-four years old and Fleming was forty-six years old.

According to the CW, on the night in question, she made plans to go to a nightclub in Lahaina to meet up with the bartender, who had invited her to come. The CW knew the bartender from prior visits to the nightclub. The CW took a taxi from her apartment to the nightclub, which was less than a five minute ride away, and arrived shortly after 9:00 p.m. The bartender was working, and the nightclub was not busy and was "almost deserted." Prior to leaving her apartment, the CW had drank two beers for "[l]iquid courage" because she was "not used to being that forward." Upon arriving at the nightclub, the CW greeted the bartender who made her a special drink called a "gummy bear."

4

During the course of the evening, the CW drank a total of four gummy bears made by the bartender.

At the nightclub, the CW played pool with the bartender. At some point, the CW and the bartender went to the VIP room, a private room away from the common area of the nightclub. While alone in the VIP room, the CW and the bartender became intimate and engaged in consensual sexual intercourse. After the CW and the bartender left the VIP room, the CW asked for a taxi and had her last gummy bear drink before leaving. The CW placed her sobriety level when she left the nightclub as between a five and a six, with level one being "completely sober" and level ten being "almost unconscious, passing out intoxicated, very intoxicated[.]" The CW did not drink that often, and the drinks affected her, making her feel "giddy and tipsy."

A nightclub employee escorted the CW up the stairs from the nightclub and helped her get into a taxicab van. Fleming was the taxi driver. The CW did not recall ever having seen Fleming before. The CW gave Fleming the name of her apartment complex and her building number, but did not engage in any other conversation with Fleming during the short drive to her home.

According to the CW, Fleming drove into the parking lot of the CW's apartment complex and parked near the CW's building. As the CW was trying to get money from her purse, Fleming opened the door and helped her out of the van. While the CW was standing on the ground and still reaching into her purse, Fleming shoved the CW backwards against the van. The CW tried to use her hands to push Fleming away, but she was not able to do so. Fleming held his arm against the CW's upper chest area. Fleming leaned all his weight against the CW and then tried to kiss her and to put his tongue in her mouth. The CW shut her teeth as hard as she could. She did not scream. Fleming placed his knee between the CW's thighs and forced her legs apart. The CW felt Fleming doing something with his pants, and then he quickly put his penis into her vagina. Fleming "pushed" about four times,

and then stepped back. When Fleming stepped back, the CW pushed him away and ran as fast as she could to her apartment.

Upon entering her apartment, the CW "ran to the bathroom and cried in the shower." While in the shower, she had a very severe panic attack, her heart was racing, she had trouble breathing, and she thought she was going to faint. The CW called 911, and a paramedic came to her apartment. The CW did not tell anyone that night, including her father with whom she resided, that she had been sexually assaulted. The following day, the CW went to the police station, reported that she had been raped the night before, and provided a description of the taxi driver.

The CW testified that she did not want to have sex with Fleming and that she did not consent or agree to have sexual relations with Fleming. She did not believe that Fleming put on or used a condom. The CW said she sustained large bruises to her elbow area as a result of Fleming's sexual assault.

After the CW reported the sexual assault to the police, she was examined later that day by William Kepler, M.D. (Dr. Kepler). Dr. Kepler testified that his examination of the CW's vaginal area did not show trauma or injury, but he noted that in the large majority of cases, sexual intercourse, whether forced or otherwise, does not usually result in injury. Dr. Kepler observed bruises on the CW's right elbow and a scratch on her right shoulder. Dr. Kepler testified that the bruises he observed on the CW's elbow were consistent with someone being pushed up against a car and striking their elbow on the vehicle.

Retired Detective Donald Simpson (Detective Simpson) testified that prior to retiring from the Maui Police Department, he had been assigned to investigate the CW's sexual assault complaint. As part of his investigation, he conducted a recorded interview of Fleming, after Fleming waived his Miranda rights. The State played the recorded interview at trial.

Detective Simpson also prepared a six-person photographic lineup, which included Fleming's picture, which he

presented to the CW.  When the CW selected a photograph, "[s]he broke down and was crying [and] became upset."

B.

After the State rested, the Circuit Court advised Fleming of his right to testify and his right not to testify. Fleming informed the Circuit Court that he had decided to testify.  Fleming's counsel then informed the Circuit Court that counsel had concerns about Fleming's ability "to assist in his defense to some degree" and that counsel believed "there is a fitness to proceed issue[.]"  Without providing the specific basis for his concern, counsel orally moved for a third mental examination to determine Fleming's fitness to proceed.  The Circuit Court denied counsel's motion.

In explaining its ruling, the Circuit Court stated that it had reviewed "the reports from the prior two [mental examinations] and all the reports have indicated that Mr. Fleming is fit to proceed."  The Circuit Court further stated that it "has not observed Mr. Fleming to have done or said anything in court that would indicate that he is not competent or fit to proceed."

C.

Fleming testified that prior to trial, he had been a taxi driver for about fifteen years.  Fleming testified that, on the night in question, he picked up the CW outside a nightclub on Front Street at about 11:30 p.m.  The CW said where she wanted to go, they exchanged names, and engaged in conversation.  Upon arriving at the CW's apartment complex, Fleming parked, and he walked around the van and opened the doors, which swung outward, for the CW.  The CW paid Fleming while still sitting in the van, and she stepped out of the van.

According to Fleming, the CW placed her arms above Fleming's shoulders and began kissing and hugging him.  Fleming asked the CW if she wanted to go to her apartment, but the CW did not say anything.  Fleming asked the CW if she would like "to do a quickie[,]" meaning have sex immediately.  The CW did not say

7

anything, but kept on hugging and kissing Fleming. Fleming told the CW to wait, and he went back to the driver's side of the van to get condoms that were in his jacket. By the time he returned, the CW had gotten back into the van and was sitting on one of the two passenger bench seats. The CW proceeded to tell Fleming about her activities at the nightclub. She then came back outside the van and they kissed some more. Fleming took out a condom and put it on. But just as he was doing so, a car drove into the parking lot and parked. Fleming moved forward and the CW leaned backwards. Fleming watched someone get out of the parked car and walk away. When Fleming turned back, the CW was bent over on the front back seat and "was sort of face flat on the seat." Fleming rubbed the CW's crotch area, and then Fleming "got behind [the CW]" and engaged in consensual sexual intercourse with the CW.

Fleming testified that the condom broke, and he "stepped back a foot or so and did my fly." The CW stood up, and Fleming put the money the CW had given him for cab fare back in the CW's purse. The CW grabbed her purse and hurriedly ran off. The CW looked angry as she ran off, like Fleming "spoiled her day." Fleming testified that he did not at any time force the CW to have sex with him.

D.

The jury returned a verdict of guilty as charged.

III. Post-trial proceedings.

After the jury returned its verdict, Fleming obtained new counsel, who filed a motion for new trial. Fleming argued that he was entitled to a new trial because he was incompetent during trial; the Circuit Court erred in denying his motion during trial for mental examination; and the prosecutor had engaged in misconduct during closing argument. In support of his incompetency claims, Fleming submitted the report of Marvin W. Acklin, Ph.D. (Dr. Acklin), a psychologist that Fleming had retained after trial to examine him. The Circuit Court ordered another mental examination of Fleming to determine whether he had

been competent during trial, and whether he was currently competent to proceed to sentencing.

After the court-appointed mental examiners completed their examinations, the parties stipulated that Fleming was not competent to proceed to sentencing, and the Circuit Court suspended the proceedings. The Circuit Court denied Fleming's motion for new trial. In doing so, the Circuit Court did not reach the merits of whether Fleming had been competent during trial, but determined that Fleming had failed to exercise due diligence in obtaining the new evidence he presented in support of his claim that he was incompetent during trial.

While the proceedings were suspended, the Circuit Court determined that Fleming had violated the conditions of his release, and it revoked his conditional release and committed him to the custody of the Director of Health for detention, care, and treatment at the Hawai'i State Hospital. Eventually, the Circuit Court determined that Fleming was competent to proceed to sentencing. On July 18, 2014, the Circuit Court sentenced Fleming to twenty years of imprisonment. This appeal followed.[4]

DISCUSSION

I.

Fleming contends that the indictment was defective because it failed to allege: (1) the statutory definition of the term "strong compulsion"; and (2) the lack of legal consent. We disagree.

Because Fleming challenges the sufficiency of his indictment for the first time on appeal, we apply the liberal construction standard. See State v. Tominiko, 126 Hawai'i 68, 76, 266 P.3d 1122, 1130 (2011). Under this standard, the indictment is afforded "a presumption of validity[,]" and a conviction will not be overturned "unless the defendant can show

---

[4] We note that on October 1, 2015, Fleming filed an application to transfer this appeal to the supreme court. On November 3, 2015, the supreme court denied Fleming's application for transfer. Thereafter, the merit panel for this appeal was assigned on December 28, 2015.

prejudice or that the indictment cannot within reason be construed to charge a crime." State v. Hitchcock, 123 Hawai'i 369, 378, 235 P.3d 365, 374 (2010).

The indictment in this case tracks the language of HRS § 707-730(1)(a), which defines the charged offense of first-degree sexual assault. Generally, a charge which tracks the language of the statute proscribing the offense is sufficient. See State v. Cordeiro, 99 Hawai'i 390, 406, 56 P.3d 692, 708 (2002); State v. Silva, 67 Haw. 581, 585, 698 P.2d 293, 296 (1985). Fleming's contention that the indictment was deficient for failing to allege the statutory definition of "strong compulsion" is without merit. The statutory definition of the term "strong compulsion"[5] is consistent with the term's commonly understood meaning. Therefore, the State was not required to allege the statutory definition for the indictment to be sufficient and to provide Fleming with fair notice of the accusation against him. See State v. Mita, 124 Hawai'i 385, 392, 245 P.3d 458, 465 (2010).

We also reject Fleming's claim that the indictment was insufficient for failing to allege lack of legal consent. The State charged Fleming with first-degree sexual assault by strong compulsion. Consent is a defense, and the State was not required to allege lack of legal consent for the charge to be sufficient. See State v. Adams, 64 Haw. 568, 569-70, 645 P.2d 308, 309-10

---

[5] HRS § 707-700 (2014) defines the term "strong compulsion" as follows:

"Strong compulsion" means the use of or attempt to use one or more of the following to overcome a person:

(1) A threat, express or implied, that places a person in fear of bodily injury to the individual or another person, or in fear that the person or another person will be kidnapped;

(2) A dangerous instrument; or

(3) Physical force.

(1982) (concluding that "indictments need not anticipate and negate possible defenses"); HRS § 806-29 (2014).[6]

II.

Fleming contends that the Circuit Court erred in denying his motion to dismiss the indictment for violation of the speedy trial requirements of HRPP Rule 48. We disagree.

Fleming was indicted on November 3, 2006, and the initial trial date was set for January 29, 2007. However, the trial was delayed numerous times, including delays resulting from Fleming's motions for competency and penal responsibility examinations and continuances stipulated to by the parties.

On July 7, 2009, Fleming filed a motion to dismiss the indictment for violation of HRPP Rule 48. The motion to dismiss asserted that: (1) 975 days had elapsed from the filing of the indictment to the filing of the motion to dismiss, (2) 708 days were excludable, (3) resulting in 267 countable speedy-trial days, 87 days over the 180-day limit. In denying Fleming's motion, the Circuit Court found that an additional 97 days were excludable: (1) the period from 2/10/09 to 4/13/09 (62 days) and (2) the period from 4/13/09 to 5/18/09 (35 days).[7] Therefore, the number of elapsed countable days was below the 180-day limit.

On appeal, Fleming challenges the Circuit Court's determination that the two additional time periods were

_____

[6] HRS § 806-29 provides:

**Exceptions need not be negatived.** No indictment for any offense created or defined by statute shall be deemed objectionable for the reason that it fails to negative any exception, excuse, or proviso contained in the statute creating or defining the offense. The fact that the charge is made shall be considered as an allegation that no legal excuse for the doing of the act existed in a particular case.

[7] At the hearing on Fleming's motion to dismiss, the Circuit Court specifically found that the 62-day period from 2/10/09 to 4/13/09 was excludable. The Circuit Court's statements and the discussion at the hearing also indicate that it found the 35-day period from 4/13/09 to 5/18/09 was excludable, but that it erroneously referred to this excludable period as "from April 4th to May 7th[,]" a period of 33 days. Because we are convinced that the Circuit Court intended to exclude the period from 4/13/09 to 5/18/09, we will use this time period, which amounts to 35 days, in our analysis of the Circuit Court's denial of Fleming's motion to dismiss.

11

excludable. HRPP Rule 48(c) sets forth periods of time that "shall be excluded in computing the time for trial commencement[.]" Periods of excludable time include:

> (2) periods that delay the commencement of trial and are caused by congestion of the trial docket when the congestion is attributable to exceptional circumstances;
>
> (3) periods that delay the commencement of trial and are caused by a continuance granted at the request or with the consent of the defendant or defendant's counsel;
>
> (4) periods that delay the commencement of trial and are caused by a continuance granted at the request of the prosecutor if:
>
> > (i) the continuance is granted because of the unavailability of evidence material to the prosecution's case, when the prosecutor has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date; or
> >
> > (ii) the continuance is granted to allow the prosecutor additional time to prepare the prosecutor's case and additional time is justified because of the exceptional circumstances of the case; [and]
>
> . . .
>
> (8) other periods of delay for good cause.

With respect to the period from 2/10/09 to 4/13/09, after Fleming was found competent to proceed for a second time on December 3, 2008, the Circuit Court set the trial for February 9, 2009. On February 4, 2009, the State moved to continue the trial, asserting that the State's primary witnesses, including the CW, were not available for trial on February 9, 2009. The Circuit Court granted the State's motion and continued the trial to April 13, 2009.

At the hearing on Fleming's motion to dismiss, the State represented that because of the extensive trial delays (over 700 days), most of which were attributable to requests by Fleming, the State was unable to find its witnesses for the February 9, 2009, trial date despite the exercise of due diligence. The State asserted that one witness moved from Hawai'i, one passed away, and another gave birth to two children. Fleming did not dispute the State's representations regarding the

12

unavailability of its witnesses and its exercise of due diligence after these representations were made at the hearing. The Circuit Court found that the State's key witnesses were unavailable for trial on February 9, 2009, and that the State had exercised due diligence. Accordingly, it found that the time period from February 10, 2009, to April 13, 2009, (62 days) was excludable. We conclude that the Circuit Court did not err in excluding this time period. See HRPP Rule 48(c)(4).

With respect to the period from 4/13/09 to 5/18/09, the Circuit Court judge on April 13, 2009, was in the midst of a ten-week civil trial, which he estimated would last for another two to three weeks. In addition, Fleming's counsel stated that he was not available for trial during the weeks of May 4, 2009, and May 11, 2009. The Circuit Court continued the trial from April 13, 2009, to July 13, 2009.

At the hearing on Fleming's motion to dismiss, the Circuit Court found that the time period from April 13, 2009, to May 18, 2009 (35 days), was excludable.[8] We conclude that the Circuit Court did not err in this determination. Under the particular circumstances of this case, the time period from April 13, 2009, to May 18, 2009 (35 days), was excludable for good cause and due to the unavailability of Fleming's counsel. The Circuit Court judge had presided over extensive pretrial proceedings in Fleming's case, including two series of mental examinations and related hearings. In addition, on April 13, 2009, the Circuit Court judge was in the seventh week of a ten-week trial. Under these circumstances, it would have been onerous and unreasonable to ask another Circuit Court judge to substitute as the presiding judge over either Fleming's trial or the ongoing ten-week trial. We conclude that there was good cause for a short trial delay to enable the Circuit Court judge to remain as the presiding judge in Fleming's case and to complete the ongoing civil trial. See HRPP Rule 48(c)(8). We

---

[8] See footnote 7, supra.

further conclude that the remaining delay from May 4, 2009, to May 18, 2009, was required by the unavailability of Fleming's counsel and was properly excluded.  See HRPP Rule 48(c)(3).[9/]

III.

Fleming contends that the Circuit Court erred in denying his motion for a new trial because: (1) the Circuit Court should have suspended the trial to conduct a third competency examination; (2) he was tried while incompetent; and (3) he was denied a fair trial by prosecutorial misconduct during closing argument.

As explained below, we conclude that the Circuit Court did not err in denying Fleming's motion for a third competency examination during trial based on the then-existing record. Fleming's motion for new trial also raised the claim that he was incompetent during trial, which was supported by evidence that had not previously been presented to the Circuit Court. The Circuit Court, however, did not render a decision on the merits regarding Fleming's claim that he was incompetent during trial. Instead, it denied this aspect of Fleming's motion for a new trial based on its conclusion that Fleming's trial counsel could have obtained the newly-proffered evidence supporting this claim before trial through the exercise of due diligence. Because "the criminal trial of an incompetent defendant violates due process[,]" Cooper v. Oklahoma, 517 U.S. 348, 354 (1996), we conclude that the Circuit Court erred in denying Fleming's motion for new trial without ruling on the merits regarding whether he was incompetent during trial. We remand for further proceedings with respect to this determination. Finally, we conclude that the Circuit Court did not err in denying Fleming's motion for a

---

[9/] We note that the State argues that the period from May 18, 2009, to July 13, 2009, should also be excluded from the speedy trial computation because this period of delay was caused by the request for a continuance by Fleming's counsel due to counsel's unavailability from May 4, 2009, to May 18, 2009. We need not reach this argument because the periods excluded by the Circuit Court, which we have affirmed, were sufficient to reduce the number of countable days below the 180-day threshold.

new trial to the extent that the motion was based on his allegations of prosecutorial misconduct during closing argument.

A.

1.

The background facts regarding Fleming's competency-related claims in his new trial motion are as follows. On two occasions before trial, Fleming's counsel filed motions for mental examination to determine Fleming's competency to proceed to trial. On both occasions, the three court-appointed examiners unanimously opined that Fleming was competent to proceed to trial. Based on their opinions, the Circuit Court on February 27, 2008, and again on December 3, 2008, found Fleming competent to proceed to trial.

Trial proceedings began with jury selection on January 11, 2010. After the State rested its case-in-chief, Fleming informed the Circuit Court that he had decided to testify. Fleming's counsel then informed the Circuit Court that based on counsel's discussions with Fleming that day, counsel had concerns about Fleming's fitness to proceed and ability to assist in his defense. Fleming's counsel did not provide specifics regarding the basis for his concerns, but orally moved for a third competency examination. The Circuit Court denied the motion, explaining as follows:

> Well, the Court has reviewed the reports from the prior two [mental examinations] and all the reports have indicated that Mr. Fleming is fit to proceed. That he's not significantly impaired by some mental or physical condition which would prevent him from understanding the proceeding that he's participating in and working with his attorney to present a defense.
>
> The Court has not observed Mr. Fleming to have done or said anything in court that would indicate that he is not competent or fit to proceed.

Fleming testified on January 20, 2010, and the jury returned its verdict of guilty as charged on January 25, 2010. On February 11, 2010, Fleming's trial counsel was replaced by new counsel.

15

2.

On March 8, 2010, Fleming filed a motion for new trial. In his motion, Fleming argued, among other things, that he was entitled to a new trial because (1) the Circuit Court had erred in denying his request for a competency examination during trial and (2) he was incompetent during trial.

In support of his motion, Fleming presented a report prepared by Dr. Acklin, a psychologist who had been retained by the defense to examine Fleming. Dr. Acklin also testified at a hearing on Fleming's motion for new trial. Dr. Acklin examined Fleming on February 12, 2010, and on March 5, 2010, and he also considered, among other things, Fleming's medical records, reports of Fleming's pretrial mental examinations, information provided by members of Fleming's family, information provided by Fleming's trial attorney, and Fleming's trial testimony. In his report, Dr. Acklin distinguished between Fleming's "basic competency" (his understanding of the "role of [the] judge, jury, defender, prosecutor, etc.") and his "decisional competency" ("ability to rationally consider, weigh, and apply relevant information to his legal situation"), such as whether to accept a plea offer or testify at trial. Dr. Acklin noted that while "[s]uperficial assessment" of Fleming's basic competency suggested that he was fit to proceed, close assessment of his decisional competency reflected "significant disturbance in his reasoning to the degree that his rational capacities are impaired." Dr. Acklin opined that Fleming's "legal impairments arise out of his chronic schizophrenia, which impaired his ability to rationally understand the proceedings and assist in his defense[.]" Dr. Acklin opined that Fleming was not competent to proceed at the time of his trial and that he was not currently competent to stand trial.

3.

The Circuit Court ordered a mental examination to determine whether Fleming had been competent during trial and whether he was currently competent to proceed. Dr. Blinder and

16

Dr. Cunningham, who had conducted pretrial mental examinations of Fleming, were appointed to conduct post-trial mental examinations. Duke E. Wagner, Ph.D (Dr. Wagner), was also appointed to conduct a post-trial examination as a substitute for Dr. Choi, one of the pretrial examiners. The post-trial examiners appointed by the Circuit Court prepared reports and all testified at hearings held on Fleming's new trial motion.

Dr. Blinder prepared a report dated May 29, 2010. Dr. Blinder observed that "this is a most unusual and oftentimes perplexing case." Dr. Blinder acknowledged that he had found Fleming competent to proceed during his two pretrial mental examinations. Dr. Blinder, however, stated that after his post-trial examination, he changed his opinion and now concluded that Fleming had been incompetent at trial. Dr. Blinder also believed that Fleming was currently incompetent to proceed. Dr. Blinder stated that "[i]n many respects, Mr. Fleming demonstrates competence, but in the one element somewhat outside the clinical purview -- his relationship with defense counsel -- he has clearly proven to be incompetent."

Dr. Blinder asserted:

> If the attorney says, Mr. Fleming, you understand you've been charged with rape. He'll say, yes, sir. . . . that's the simple concrete short answer, short answers to a short question.
>
> But should the attorney then want to explore with him what went on during this rape and why he's innocent and why it never happened, then you see Mr. Fleming slowly start to slide off into the deep end, into a pool of jello, where you can't get his mind around the nuances that he's facing in a charge of a sexual offense.

Dr. Blinder explained that although he found Fleming competent before trial, with the additional data Dr. Blinder received post-trial, Dr. Blinder now felt "on balance, [Fleming] is incompetent. That doesn't mean there aren't islands of competence remaining, but they're not large enough to get him over the hump."

Dr. Cunningham prepared a report dated August 26, 2010. Dr. Cunningham stated that his pretrial diagnosis of Fleming as

17

having no mental disorder was incorrect and that he now diagnosed Fleming as having schizophrenia, residual type. In his post-trial examination, Dr. Cunningham observed that Fleming's competency "was at first mildly impaired and then deteriorated significantly toward the end of [their] nearly two hour meeting." As Fleming became tired, he became more disorganized. He did not perform well on testing designed to assess his ability to cooperate rationally with counsel and planning of legal strategy. At Dr. Cunningham's request, the Circuit Court excused him from having to provide an after-the-fact, retrospective opinion regarding Fleming's competency during the trial. Dr. Cunningham opined that Fleming was likely competent to proceed to sentencing, since a sentencing hearing would likely be brief and require relatively little input from Fleming. However, Dr. Cunningham opined that should Fleming be retried, "[t]here is good reason to believe that . . . he would not meet the criteria for fitness during at least some portion of his trial." In particular, Dr. Cunningham stated there was a question regarding whether Fleming "will decompensate in response to the stress of an imminent or current court appearance and/or prolonged demands upon his concentration."

Dr. Wagner prepared a report dated September 14, 2010. Dr. Wagner observed that "[t]he longer the defendant was interviewed, the more apparent it became that some of his thoughts were not logical, rational in nature." With respect to Fleming's current competency, Dr. Wagner opined that based on his post-trial examination of Fleming, Fleming was not currently competent to proceed. Dr. Wagner explained:

> It is important to understand that [Fleming] can present an initial demeanor that appears appropriate with no real indication of an obvious mental illness. However, after going beyond the surface, examining all of the information available, and spending meaningful time with [Fleming], it is apparent that due to his underlying chronic mental illness, he is not able to truly understand the criminal proceedings against him nor truly be able to adequately assist in his own defense.

18

With respect to whether Fleming had been competent during his January 2010 trial, Dr. Wagner declined to render an opinion because he had not directly interviewed Fleming close to that date. Dr. Wagner stated that he was "unable to provide a reliable opinion" concerning whether Fleming had been competent at the time of his trial. Dr. Wagner, however, noted that there were "materials/documents which bring into question [Fleming's] mental health at [the time of his trial]."

4.

The Circuit Court held hearings on Fleming's motion for new trial on November 12, 2010, January 21, 2011, and January 24, 2011. After the hearings, the Circuit Court issued "Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion for New Trial" (Order Denying New Trial) on March 16, 2011. In its Order Denying New Trial, the Circuit Court noted that the parties had stipulated that Fleming was not presently fit to proceed to sentencing. The Circuit Court found that Fleming was not presently fit to proceed, and it suspended the proceedings.

In denying Fleming's motion for new trial, the Circuit Court rejected Fleming's claim that it had abused its discretion in denying Fleming's oral motion during trial for a mental examination. The Circuit Court ruled that based on the evidence and facts at its disposal, it was reasonable for the Circuit Court to conclude that there was no rational basis to doubt Fleming's competency.

With respect to Fleming's claim that he was entitled to a new trial because he was incompetent during his trial, the Circuit Court did not make a determination on the merits on whether Fleming had been incompetent during the trial. Instead, the Circuit Court denied Fleming's claim on the ground that Fleming was relying upon evidence that could have been obtained by Fleming's counsel through the exercise of due diligence before trial. In particular, the Circuit Court noted that the most critical evidence relied upon by Fleming was Dr. Acklin's evaluation, which in turn was based on interviews with Fleming

19

and Fleming's trial counsel and information provided by Fleming's family. The Circuit Court further noted that Fleming's counsel had been concerned about Fleming's competency before trial, and there was evidence that Fleming's medical condition had not changed since 1985. The Circuit Court ruled that because substantial evidence of Fleming's alleged pretrial unfitness could have been obtained by his trial counsel before trial, the requirements for granting a new trial based on newly discovered evidence had not been met.

B.

The following legal principles are relevant in evaluating the Circuit Court's denial of Fleming's new trial motion with respect to his competency-related claims. The United States Supreme Court has repeatedly recognized that

> "the criminal trial of an incompetent defendant violates due process." Nor is the significance of this right open to dispute. As Justice KENNEDY recently emphasized:
>
> > "Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so."
>
> The test for incompetence is also well settled. A defendant may not be put to trial unless he "'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him.'"

Cooper, 517 U.S. at 354 (citations, footnotes, brackets, and ellipsis points omitted). The Court has also observed:

> For the defendant, the consequences of an erroneous determination of competence are dire. Because he lacks the ability to communicate effectively with counsel, he may be unable to exercise other "rights deemed essential to a fair trial." After making the "profound" choice whether to plead guilty, the defendant who proceeds to trial
>
> > "will ordinarily have to decide whether to waive his 'privilege against compulsory self-incrimination' by taking the witness stand; if the option is available, he may have to decide whether to waive his 'right to trial by jury'; and, in consultation with counsel, he may have to decide whether to waive his 'right to

20

> confront his accusers' by declining to cross-examine witnesses for the prosecution."
>
> With the assistance of counsel, the defendant also is called upon to make myriad smaller decisions concerning the course of his defense. The importance of these rights and decisions demonstrates that an erroneous determination of competence threatens a "fundamental component of our criminal justice system" -- the basic fairness of the trial itself.

Id. at 364 (citations, footnote, and brackets omitted).

With respect to a trial court's authority to suspend proceedings and order a mental examination, HRS § 704-404(1) and (2) (Supp. 2009), at the time relevant to this case, provided:

> (1) Whenever . . . there is reason to doubt the defendant's fitness to proceed, or reason to believe that the physical or mental disease, disorder, or defect of the defendant will or has become an issue in the case, the court may immediately suspend all further proceedings in the prosecution. If a trial jury has been empanelled, it shall be discharged or retained at the discretion of the court. . . .
>
> (2) Upon suspension of further proceedings in the prosecution, the court shall appoint three qualified examiners in felony cases . . . to examine and report upon the physical and mental condition of the defendant.

The Hawai‘i Supreme Court has stated:

> Although HRS § 704-404 provides that the court may suspend the proceedings and appoint an examiner or panel of examiners once one of the triggering events occurs, a trial court "is duty bound to sua sponte convene a hearing if it itself has or is presented with rational basis for believing that the physical or mental defect of a defendant will become an issue on the question of fitness or responsibility." This duty required by HRS § 704-404 satisfies the procedural due process protections of article I, section 5 of the Hawai‘i Constitution, and the fourteenth amendment to the United States Constitution.
>
> Thus, when a trial court finds that there is "reason to doubt" a defendant's fitness or "reason to believe" that the defendant's mental or physical state will become an issue in the case, the court is required to suspend the proceedings and order an examination pursuant to HRS § 704-404.

State v. Harter, 134 Hawai‘i 308, 330-31, 340 P.3d 440, 462-63 (2014) (citations, footnote, and ellipsis points omitted).

C.

1.

Fleming argues that the Circuit Court erred in denying his motion during trial for a mental examination. We disagree.

21

We review the Circuit Court's denial of a motion for a mental examination to determine competency for abuse of discretion. State v. Castro, 93 Hawai'i 424, 426, 5 P.3d 414, 416 (2000). We conclude that based on the record before it, the Circuit Court did not abuse its discretion in denying Fleming's motion during trial for a mental examination pursuant to HRS § 704-404. Fleming had undergone two separate pretrial examinations pursuant to HRS § 704-404 in which the three appointed examiners had all concluded that Fleming was competent to proceed to trial. In denying Fleming's motion during trial for a mental examination, the Circuit Court stated that it had not observed Fleming do or say anything in court to indicate that he was not competent or fit to proceed. In its Order Denying New Trial, the Circuit Court also noted that Fleming, during his trial testimony, "responded to every question from the attorneys and jury, and provided a detailed chronology of his encounter with the complaining witness, from the time [s]he entered his taxi outside the bar to the time she left the taxi at her apartment[.]" Moreover, although Fleming's counsel expressed his concern during the trial about Fleming's competence, counsel did not provide any details about the basis for his concern. Under these circumstances, we conclude that the Circuit Court did not abuse its discretion in determining that based on the record before it, there was no rational basis to doubt Fleming's fitness to proceed and in denying Fleming's motion during trial for a mental examination.

2.

With respect to Fleming's post-trial claim that he was incompetent during trial, we conclude that the Circuit Court erred in failing to render a decision on the merits regarding this claim.[10] A defendant has a constitutional right not to be tried while incompetent. Cooper, 517 U.S. at 354. It is a

---

[10] As noted, after Fleming's trial, the Circuit Court ordered a mental examination to determine whether Fleming had been competent during trial and whether he was currently competent to proceed.

violation of due process to convict a defendant who was incompetent to assist in his or her defense at trial. See id. Thus, the Circuit Court could not deny Fleming's motion for a new trial without determining whether he was competent at the time of trial.

The Circuit Court rejected Fleming's claim on the ground that it was based on evidence that could have been discovered prior to trial. However, the evidence relied upon by Dr. Acklin and the post-trial examiners appointed by the Circuit Court included Fleming's trial testimony and Fleming's possible reaction to the stress placed upon him by the trial process. In addition, while Fleming had undergone multiple pretrial mental examinations, the post-trial examinations resulted in assessments of Fleming's mental condition and competency that differed from the pretrial assessments. Dr. Blinder, in particular, who had found Fleming competent to proceed to trial based on his pretrial examinations, changed his opinion based on his post-trial examination and concluded post-trial that Fleming had not been competent at the time of Fleming's trial. Under these circumstances, we conclude that it was incumbent upon the Circuit Court to address on the merits whether Fleming had been tried while he was incompetent.

With respect to the appropriate remedy for the Circuit Court's error, we acknowledge that given the passage of time, it may be difficult for the Circuit Court on remand to render a decision on Fleming's competency at the time of his trial. However, given the mental examinations conducted relatively close in time after the conclusion of the trial; the trial record and transcripts, which includes Fleming's trial testimony; and other evidence regarding Fleming's mental status at the time of trial which may be available, it appears that a retrospective determination of Fleming's competency at the time of his trial may be possible.

We conclude that the following approach is appropriate. We will remand the case to give the Circuit Court the opportunity

23

to determine whether Fleming was competent at the time he was tried. If the Circuit Court determines that Fleming was incompetent at the time of his trial, or if the Circuit Court finds that it is unable to make a reliable retrospective determination of Fleming's competency at the time of his trial, it shall vacate Fleming's conviction and grant him a new trial. If the Circuit Court determines that Fleming was competent at the time of his trial, it shall reinstate its denial of Fleming's motion for new trial with respect to this claim. See United States v. Makris, 535 F.2d 899, 904-905 (5th Cir. 1976) (upholding retrospective determination of defendant's competency at trial on remand); United States v. Mason, 935 F.Supp. 745, 759 (W.D. N.C. 1996) (finding that the retrospective determination of the defendant's competency during trial was possible).

D.

We reject Fleming claim that the Circuit Court erred in ruling that he was not entitled to a new trial based on his claims of prosecutorial misconduct in closing argument.

Fleming argues that the prosecutor's rebuttal closing argument was improper because it was not confined to answering new matters or arguments presented by Fleming and contained disparaging comments about Fleming. We disagree.

During his closing argument, Fleming's counsel referred to the CW's testimony as delusional and asserted that she had lied in her testimony. Defense counsel argued that the CW had engaged in consensual sex with Fleming, that she had flirted with him, and that she had dressed provocatively and had initiated the sexual encounter.[11] We conclude that the prosecutor's rebuttal, which included comparing Fleming to the bartender and contrasting the CW's consensual sexual encounter with the bartender with her encounter with Fleming, for the purpose of refuting Fleming's claim that the CW had engaged in consensual sex with Fleming, was

---

[11] Defense counsel referred to the CW wearing "her 12-year-old sister's mini skirt with no underwear." The CW testified that she does not normally wear underwear, and was not doing so on the night in question.

permissible.  The prosecutor's arguments were in rebuttal to arguments raised by defense counsel in his closing argument and constituted fair comment on the evidence.  State v. Clark, 83 Hawai'i 289, 304, 926 P.2d 194, 209 (1996) (concluding that a prosecutor in closing argument is allowed wide latitude in discussing the evidence and is permitted to comment on and draw reasonable inferences from the evidence).

During closing argument, the prosecutor referred to the humiliation and difficulties the CW, as victim of sexual assault, had to endure in reporting and testifying at trial about the sexual assault.  Fleming apparently contends that these references were improper as an emotional appeal to the jury for sympathy for the CW.  However, Fleming's counsel had attacked the CW's credibility, and we conclude that the prosecutor's statements were permissible in light of these attacks.

IV.

Fleming contends that the Circuit Court erred in instructing the jury because: (1) the instructions on strong compulsion and ineffective consent constituted a constructive amendment of or fatal variance from the indictment; (2) there was insufficient evidence to instruct the jury on strong compulsion and ineffective consent; and (3) the unanimity instruction was insufficient.  We conclude the Fleming is not entitled to relief on his jury instruction claims.

A.

Consistent with the statutory definition of "strong compulsion," the Circuit Court instructed the jury that strong compulsion "means the use or attempt to use one or more of the following to overcome a person.  One, a threat expressed or implied that places a person in fear of bodily injury to the individual or, two, physical force."

Fleming apparently contends that because the CW's description of the sexual assault to the grand jury did not include any verbal threats, instructing the petite jury that strong compulsion could include an express or implied threat of

25

bodily injury constituted a constructive amendment of or fatal variance from the indictment. We disagree. Fleming was charged with committing sexual assault by strong compulsion, and the Circuit Court's jury instruction correctly defined that term. In addition, the CW's version of the incident, which included Fleming pushing her against the van, using all his weight to keep her confined, and forcing her legs apart with his knee, could be viewed as involving an implied threat by Fleming of bodily injury. The instruction on strong compulsion did not constitute a constructive amendment of or a fatal variance from the indictment.

With respect to the instruction on ineffective consent, as previously noted, consent is a defense, and the State was not required to allege lack of legal consent in the indictment. Thus, the instruction on ineffective consent was not a constructive amendment of or fatal variance from the indictment.

B.

Contrary to Fleming's claim, there was sufficient evidence to support the instructions on strong compulsion and ineffective consent. With respect to strong compulsion, the CW's testimony regarding Fleming's use of physical force against her could also be viewed as an implied threat of bodily injury. The evidence of the CW's alcohol consumption was sufficient to support the Circuit Court's instruction on ineffective consent due to intoxication.

C.

We reject Fleming's claim that the Circuit Court's generic unanimity instruction (requiring unanimous agreement that the same act has been proven) was insufficient. See State v. Jones, 96 Hawai'i 161, 176-77, 181, 29 P.3d 351, 366-67, 371 (2001) (concluding that absence of consent and ineffective consent are alternative means, for which unanimity is not required, of establishing lack of legal consent). We note that in addition to the generic unanimity instruction challenged by Fleming, the Circuit Court instructed the jury that it "may not

26

convict the defendant upon any charge that may apply to this case unless it unanimously finds beyond a reasonable doubt that [the CW] did not expressly or impliedly consent to the sexual penetration by the defendant[.]" Thus, the jury was specifically instructed that it had to unanimously find that the CW did not consent to sexual penetration.

Moreover, in convicting Fleming, the jury must have found that Fleming used strong compulsion. By their definitions, strong compulsion and consent are mutually exclusive. State v. Keomany, 97 Hawai'i 140, 149, 34 P.3d 1039, 1048 (App. 2000). Thus, any failure of the instructions to require unanimity regarding the theories of absence of consent and ineffective consent was harmless.

V.

Fleming argues that his trial counsel provided ineffective assistance. In reviewing a claim of ineffective assistance of counsel, we ask whether when "viewed as a whole, the assistance provided is 'within the range of competence demanded of attorneys in criminal cases.'" State v. Antone, 62 Haw. 346, 348, 615 P.2d 101, 104 (1980) (citation omitted). In order to establish a claim of ineffective assistance of counsel, the defendant has the burden of demonstrating: "1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998) (block quote format and citation omitted).

We conclude that Fleming's claims of ineffective assistance of trial counsel include matters that involve potential strategic decisions of trial counsel which require further development of the record to resolve. With respect to Fleming's claims that trial counsel was ineffective for failing to do more to investigate and provide evidence to demonstrate Fleming's lack of competency at trial, we note that trial counsel

twice moved for mental examinations before trial and moved a third time for a mental examination during trial. Based on the existing record, we conclude that Fleming has not met his burden of establishing that his trial counsel provided ineffective assistance. Our decision, however, is without prejudice to Fleming raising his claims of ineffective assistance of counsel pursuant to HRPP Rule 40 (2006) and seeking further development of the record.

VI.

Fleming challenges several post-trial rulings by Judge Loo, who took over the case after the denial of Fleming's motion for new trial by Judge August and Judge August's retirement. Fleming contends that Judge Loo's actions, "both individually and/or cumulatively, reveals" the violation of "Fleming's procedural and substantive due process rights to a fair tribunal[.]" Fleming argues that Judge Loo erred in: (1) replacing the three-member panel appointed by Judge August to evaluate Fleming's competency to proceed to sentencing with a new three-member panel and in restricting the database available to the panel; (2) revoking Fleming's conditional release and committing him for an extended period to the Hawai'i State Hospital; (3) finding Fleming fit to proceed to sentencing; and (4) denying Fleming's motion for recusal. We conclude that Fleming is not entitled to relief on these claims.

A.

Fleming argues that Judge Loo erred in appointing a new three-member panel to determine his competency to proceed to sentencing and in preventing them from reviewing reports prepared by Dr. Acklin, Fleming's retained expert, and the prior panel examiners.[12] Although we may not have taken the same actions, we cannot say that Judge Loo abused her discretion in doing so. At the time relevant to this case, HRS § 704-404 provided that "each examiner shall form and render diagnoses and opinions upon the

---

[12] The post-trial examiners appointed by Judge August had been provided with prior reports prepared by Dr. Acklin.

physical and mental condition of the defendant independently from the other examiners[.]" HRS § 704-404(3) (Supp. 2008). In addition, the statute provided that "[w]here more than one examiner is appointed, [the examiner's report shall include] a statement that the diagnosis and opinion rendered were arrived at independently of any other examiner, unless there is a showing to the court of a clear need for communication between or among the examiners for clarification." HRS § 704-404(4)(f) (Supp. 2008). The actions taken by Judge Loo were in furtherance of the policy of HRS § 704-404 to secure independent assessments by the appointed examiners, and we cannot say that Judge Loo abused her discretion in taking such actions.

B.

Fleming contends that Judge Loo abused her discretion in finding Fleming competent to proceed to sentencing based on the opinion of psychologist Alex Lichton, Ph.D. (Dr. Lichton). We disagree.

Dr. Lichton, one of the newly appointed panel members, opined that Fleming was competent to proceed to sentencing. Judge Loo relied on the opinion of Dr. Lichton, whose testimony she found to be "the most logical, persuasive, and credible[,]" in finding Fleming competent to proceed to sentencing. Although other doctors who examined Fleming disagreed with Dr. Lichton's opinion, we give deference to the trial court's assessment of credibility and the weight of the evidence. See State v. Eastman, 81 Hawai'i 131, 139, 913 P.2d 57, 65 (1996) ("An appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge.") We conclude that Judge Loo did not abuse her discretion in relying on Dr. Lichton's opinion in finding that Fleming was competent to proceed to sentencing.

C.

Fleming contends that Judge Loo erred in denying his motion that she recuse herself. We disagree.

29

Fleming's claims of bias are based on Judge Loo's rulings against him. However, "[a]dverse rulings, even if erroneous, do not establish bias." State v. Ortiz, 91 Hawai'i 181, 196, 981 P.2d 1127, 1142 (1999) (internal quotation marks and citation omitted). We conclude that Judge Loo did not abuse her discretion in denying Fleming's motion for recusal.

D.

In light of our rulings, Fleming's claims that Judge Loo erred in revoking Fleming's conditional release and committing him to the Hawai'i State Hospital for an extended period are moot. We therefore do not address those claims.

CONCLUSION

Based on the foregoing, we remand the case to the Circuit Court for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawai'i, August 23, 2017.

On the briefs:

Hayden Aluli
for Defendant-Appellant.

Peter A. Hanano
Deputy Prosecuting Attorney
County of Maui
for Plaintiff-Appellee.

Craig H. Nakamura
Chief Judge

Associate Judge

Associate Judge

30